MARSHALL *v.* PONTIAC, OXFORD & NORTHERN RAILROAD CO.

CARRIERS—LOSS OF BAGGAGE—LIABILITIES.

> \* M. purchased a ticket at Detroit over the D., G. H. & M. Railroad to Pontiac, and from Pontiac to Imlay City over the defendant's railroad. He presented the ticket to the agent of the D., G. H. & M. R. Co., and had his trunk checked to Imlay City. He purchased the ticket for the sole purpose of checking his trunk. He did not intend to go on the train, and did not go, but went by his own private conveyance. His trunk arrived at Imlay City Saturday morning at about 10 o'clock, remaining upon the platform until noon, when the agent put it in the baggage room. Saturday or Sunday night the baggage room was burglarized, and the trunk and

---

\* Head-note by GRANT, J.

contents stolen. *Held,* that M. was not in the position of a *bona fide* passenger; that the defendant was not an ordinary warehouseman, bound to the exercise of that care which the average man takes of his own property, but was a gratuitous bailee, liable only for gross negligence.

Error to Lapeer; Smith, J. Submitted November 14, 1900. Decided February 27, 1901.

*Assumpsit* by David S. Marshall against the Pontiac, Oxford & Northern Railroad Company to recover the value of lost baggage. From a judgment for plaintiff, defendant brings error. Reversed.

The facts in this case appear in the following statement, prepared by defendant's counsel, and given to the jury by the court below:

"The undisputed facts in this case go to show that on the 11th day of August, 1899, plaintiff purchased a ticket at the office of the Detroit, Grand Haven & Milwaukee Railroad in the city of Detroit over that railroad and the Pontiac, Oxford & Northern Railroad to Imlay City, about 5 o'clock in the afternoon. Knowing that no train left until the next morning, he had his trunk checked for Imlay City, with no intention of going on that train, or accompanying the trunk. The trunk was sent the next morning, and at Pontiac was taken and carried over the defendant's road to Imlay City, arriving there about 10 o'clock the next morning, no one accompanying it. On the arrival of the trunk at Imlay City, it was placed upon the platform of the station, and remained there for an hour, at least, waiting for the owner to call for it; but, he not calling for it, the trunk was placed in the defendant's baggage room, which has been in use as such for several years. This was Saturday, August the 12th. The baggage room was one used by the defendant. There was a window on the east side. This window was fastened down; and some time in the night of August 13th, which was Sunday night, the baggage room was burglariously entered by prying open the door on the west wide, pushing the lock aside by pushing the screws from the casing which held the fastening, and feloniously taking and carrying away the trunk and the articles therein in con-

troversy. The windows were not touched or in any way interfered with."

Upon this statement the court was requested to direct a verdict for the defendant. This was refused, the court holding, and so instructing the jury, that the following questions of fact were for their determination:

1. Was the room such as is usually used by railway companies for the purpose of taking care of baggage which was uncalled for?

2. Was this particular baggage room such as were the others on the defendant's road?

3. Was the door properly fastened?

4. Was the plaintiff familiar with the construction of or safety of the room as a place of storage?

The court also instructed the jury that the defendant's liability as a common carrier had ceased, and that it could be only held liable as a warehouseman; that, as a warehouseman, it was its duty to place the trunk in such a place as a man of ordinary prudence would store his goods in, and that it must be such a place as other railroad companies are in the habit of using under like circumstances.

The amount of plaintiff's claim was $60.50. The jury rendered a verdict for $40.

*Aug. C. Baldwin* (*A. L. Moore,* of counsel), for appellant.

*H. W. Smith,* for appellee.

GRANT, J. (*after stating the facts*). It is the well-established rule that the rigorous liability of a railroad company as a common carrier ceases when the passenger's trunk has reached its destination, and been placed upon its platform ready for delivery, and a reasonable opportunity given to take it away. After reasonable opportunity has been given the passenger to take it away, the company, according to many authorities, is liable only as warehouseman, bound to the exercise of ordinary care. Was the defendant in this case such a bailee, or a gratui-

tous bailee, liable only for gross negligence? Plaintiff was not a passenger, and did not intend to be a passenger, on the train with his baggage, or for some time thereafter, if ever. He was not a passenger over the defendant's road until more than four months had elapsed. He had not used his ticket when the case was tried in the justice's court, but had used it shortly before it was tried in the circuit. Baggage implies a passenger who intends to go upon the train with his baggage, and receive it upon the arrival of the train at the end of the journey. For his own convenience, plaintiff purchased a ticket for the sole purpose of deceiving the railroad company into the belief that he intended to be a passenger, entitled to have carried with him the usual amount of baggage. His contract was that of a passenger. He intended to go to his destination by his private conveyance, and there present his check and obtain his baggage. This he did, and, without having been a passenger, asks the same protection as if he had been one. If he had sold the ticket (which he might have done) to another passenger, he would stand in no different light from that in which he does now. So that the question is presented: May a passenger purchase a ticket, check his baggage, sell the ticket, and then stand in the position of a *bona fide* passenger upon the road? Counsel cite no authority the parallel of this, and our knowledge of the counsel leads us to conclude that they have made a careful research, and are unable to find any. My own examination of the authorities fails to find a parallel case.

The defendant was not in fault in checking the baggage. Its agent, the baggage master, was justified in assuming that the plaintiff intended to accompany his baggage upon the next train A baggage master has no authority or right to check baggage for any other than a passenger. If, therefore, plaintiff had disclosed to the baggage master the actual situation, he would have been refused a check.

In a case of libel against a boat for a loss of baggage,

the libelant had taken passage on the boat from Antwerp
to New York.   The vessel left before the arrival at Ant-
werp of the goods, which consisted of ten packages and
one basket, and it became necessary to send them by
another vessel.   On their arrival, two trunks and the
basket could not be found.   The ground of defense was
that the goods were shipped on a passenger ship as per-
sonal baggage belonging to the passenger, and, as she
did not take passage on board the ship, and pay the fare,
which would include compensation for the usual baggage,
no compensation was paid, and the ship was entitled to
none, and therefore the master was a gratuitous bailee,
responsible only for gross negligence.   The court held
that, where a passenger accompanies his baggage, the
fare includes compensation for its transportation; if,
however, he does not accompany it, the carrier may
demand compensation in advance, or upon delivery, rely-
ing on his lien or the personal responsibility of the owner.
*The Elvira Harbeck,* 2 Blatchf. 336 (Fed. Cas. No.
4,424).

In *Wilson* v. *Railway Co.*, 56 Me. 60 (96 Am.
Dec. 435), it is said, "It is implied in the contract that
the baggage and the passenger go together."

Redfield says that the receipt and carriage of baggage
are incidental to passenger transportation, and that the
agents of railroad companies have no authority to receive
baggage to carry upon any other basis.   2 Redf. R. R. §
171; Hutch. Carr. § 702.

Where a passenger had arrived at her destination, had
left the cars, taken her baggage into her possession, and
immediately left it in the baggage room for a few hours,
it was held that the company was a gratuitous bailee,
liable only for gross negligence.   *Minor* v. *Railway Co.*,
19 Wis. 40 (88 Am. Dec. 670).

See, also, *Hodkinson* v. *Railway Co.*, 14 Q. B. Div.
228.

We must not be understood as holding that it is abso-
lutely necessary for the passenger to go upon the same

train with his baggage in order to entitle him to have his baggage taken care of at his destination by the railroad company as a warehouseman. Where the passenger purchased his ticket with the *bona fide* intention to use it, but, without fault upon his part, did not accompany it, but went upon a following train, a different case is presented.

We conclude that plaintiff was not a passenger; that the defendant was a gratuitous bailee, and was not guilty of gross negligence; and that, therefore, plaintiff could not recover.

Judgment reversed, and no new trial ordered.

The other Justices concurred.