Toledo, St. Louis & Kansas City Railroad Company v. Tapp.

No. 777.

TOLEDO, ST. LOUIS & KANSAS CITY RAILROAD COMPANY v. TAPP.

RAILROAD. —*Baggage Checked.*—*Loss.* —*Liability for.* —*Burden of Proof.*— Where a person purchases a proper ticket to be carried as a passenger, and has baggage checked, which is lost, the burden is upon the company to prove that the loss occurred from a cause which exempts it from liability.

SAME.—*Duty to Carry Baggage.*—*Should Go on Same Train with Passenger.*— Where a passenger has baggage checked, it is the duty of the company to carry it upon the same train with the passenger, provided the passenger allows the agent a reasonable time for checking and getting the same on the train after the purchase of the ticket.

SAME.—*Baggage.*—*Should Give Time for Removal After Arrival.*—*Reasonable Time.*—It is the duty of a railroad company to give its passengers who have baggage checked a reasonable time after the arrival of the same to take it away before locking it up in the warehouse, and, failing to do so, the liability of the company as a carrier does not cease; and as to what is a reasonable time, is a mixed question of law and fact.

SAME.—*Common Carrier.*—*An Insurer of Goods.*—*Negligence in Delivery.*— *Storage.*—*Liability as a Warehouseman.*—A carrier is an insurer of goods carried, and where baggage is negligently delayed in forwarding or delivering the same, the duty as a carrier of such does not cease when the goods have reached their destination, and are placed in the warehouse.

NEGLIGENCE.—*Damages.*—*Combination of Causes, One Negligent, the Other not.*—*Liability.*—Where two causes combine to produce a loss, both being proximate, one the result of negligence, the other an occurrence as to which neither party is at fault, the negligent party is liable if the injury would not have been sustained but for such negligence.

From the Tipton Circuit Court.

*S. O. Bayless, C. G. Guenther* and *C. Brown,* for appellant.

*J. W. Cooper, B. F. Harness, M. Bell* and *W. C. Purdum,* for appellee.

REINHARD, C. J.—On the morning of the 12th day of August, 1886, the appellee purchased of the appellant's .agent, for himself and wife, tickets over the appellant's·

railroad as passenger from Kokomo to Russiaville, in Indiana. Appellee and wife had a trunk containing their baggage for which duplicate checks were procured from the agent, one of which was fastened to the trunk and the other delivered to the appellee, who directed that the trunk should be forwarded to Russiaville, upon the same train with himself and wife. The trunk was detained, however, at Kokomo until the arrival of the afternoon train, when it was duly shipped to Russiaville, reaching that place late in the evening, where it was placed in the appellant's warehouse. During the night the warehouse was consumed by fire, and with it the trunk and its contents. The appellee sued and recovered of the appellant the value of the trunk and contents, and from that judgment this appeal is taken.

The appellant disputes its liability on the ground that the facts show that it sustained to the appellee the relation of a warehouseman only, and not that of a common carrier. It is claimed on behalf of appellant, that the warehouse was struck by lightning, which was the real cause of the fire, and that as this was the act of God, rather than that of man, the appellant is exempt from responsibility for the same.

The jury returned a special verdict, and, at the request of one of the parties, also answered certain interrogatories submitted.

Numerous errors are assigned and ably and elaborately discussed by the learned counsel on both sides, but as they are all directed to the question of appellant's liability under the facts found, it is not necessary that we should set them out in this opinion.

The appellee's complaint proceeds upon the theory, and it is the contention of his counsel, that the appellant is liable on its obligation as a common carrier. Such carriers become insurers of the goods, and are responsible for their safe transportation and delivery, unless the loss or in-

jury is the result of an act of God or the public enemy. A carrier may, by special contract, limit his liability in some cases, but he can not even do this as against his own negligence, or that of his servants. Where the plaintiff in such case proves the delivery of the goods to the carrier, the latter's acceptance of the same, under an express or implied contract to deliver them, and the failure to perform on the part of the carrier, it then devolves upon the carrier to show that the loss or injury occurred through some cause which imposes upon him no liability. 2 Am. and Eng. Ency. of Law 904, and authorities cited.

Under this rule, when the appellee had shown the delivery of the trunk and baggage to the station agent of appellant, the purchase of a ticket by the appellee, by which the latter and his baggage were to be transported, and the failure to deliver the trunk and contents, the burden was upon the appellant to prove that the loss occurred from some cause by reason of which it is exempt from liability.

To determine this question, we must look to the facts in the case.

The following is the special verdict returned by the jury :

"1. That upon the 12th day of August, 1886, the defendant was the owner and proprietor of a railroad running through the county of Howard, and State of Indiana, and to and through the city of Kokomo, and to the town of Russiaville in said county, and a common carrier of freight, passengers, and baggage thereon for hire.

"2. That upon said day, in the morning, the plaintiff purchased of the defendant tickets entitling him and his wife to be carried from said city of Kokomo to said town of Russiaville, together with their baggage, consisting of one trunk and contents.

"3. That the passenger train going west upon said road was due at the city of Kokomo at 10-23 o'clock in the forenoon of said day.

"4. That said baggage was transferred from the depot of the Lake Erie & Western Railroad in the city of Kokomo to the depot of the defendant in said city, and placed in the usual place of depositing baggage intended to be carried on defendant's road, at which first depot said baggage had arrived on the 11th day of August, 1886, from Bloomington, Indiana, where plaintiff and his wife had before that time been on a visit.

"5. That the plaintiff and his wife arrived at the depot of the defendant about 10 o'clock A. M. on the 12th day of August, 1886, twenty to thirty minutes before the arrival of said train going west, and immediately upon their arrival he, plaintiff, purchased tickets for passage to said Russiaville, and requested the agent to check said trunk to said town of Russiaville, upon which request said agent delivered to him, plaintiff, a check and directed him to place the same upon said trunk, which plaintiff did in the presence of said agent at least fifteen minutes before the arrival of said train, and kept the duplicate of said check in his possession.

"6. That said agent after the arrival of the plaintiff and wife at said depot, and after the purchase of said tickets, and after said check had been placed upon said trunk, said agent and employe of defendant had sufficient and reasonable time, to wit, at least twenty minutes time in which to have placed the same where it could have been put on board said cars when the same should arrive, and ample time to have placed the said trunk upon said train before its departure from said station; that without any fault or negligence on the part of the plaintiff, but through the negligence and carelessness of the agent and employes of defendant, said trunk was not placed upon said train, but it was permitted to remain in said depot until late in the afternoon of said day, to wit, until 5.30 o'clock P. M., when the same was carried to said town of Russiaville, upon a local train upon said road carrying freight, baggage,

and passengers, where the same arrived about twenty minutes after six o'clock.

"7. That upon said day, defendant had only one person, viz., W. J. Carroll, in charge of its business at such station of Kokomo, whose duties required him to sell tickets to, and check the baggage of, passengers upon said road, to perform the duties of telegraphic operator, to make out bills and receipts for freight, to attend to trains upon said road upon their arrival, and to transact all and singular the business of said company at said station, and by reason of the carelessness and negligence of the defendant's agents and employes in charge of said business, said trunk was not placed on board said morning train upon which plaintiff embarked.

"9. That upon the arrival of said morning train at Russiaville said plaintiff presented to the agent of defendant in charge of the depot at that station said check, and demanded the delivery of said trunk to him, and was informed by said agent that the same had not arrived, but would be sent down by the local train, to arrive at about 5.47 o'clock P. M.

"10. That the plaintiff, after his arrival at Russiaville, employed one Charles Bowers, a drayman, to go to the depot when the next train from Kokomo should arrive, due there at 5.47 o'clock in the afternoon of said day, and receive and take away said trunk, and delivered to said drayman said duplicate check.

"11. That Charles Bowers, said drayman, at the time when said train was due, viz., 5.47, did go to said depot for the purpose of receiving said trunk, and was informed by said agent of said depot, viz., Sherman Nichols, that said train was one hour late.

"12. That within one hour after said Nichols had informed said Bowers that said train was late, he again started to said depot for the purpose of getting said trunk, and met said Nichols in Russiaville, about one-fourth of a

mile from the depot, when said Bowers demanded of said agent the plaintiff's trunk, and then said Nichols then and there informed said Bowers that the trunk had arrived, but was locked up in the depot, and that he, Bowers, could not get it. Said demand and refusal was between 6.45 and 7 o'clock P. M.

" 12½. That within from fifteen to twenty minutes after the arrival of said trunk at the town of Russiaville it was placed in defendant's depot at said place by the agent of defendant.

" 13. That about twenty or thirty minutes after the time of meeting said Nichols, as set forth in finding No. 12, said Bowers again returned to the depot for the purpose of getting said trunk, and found the door of said depot locked up, with no agent or employe in charge thereof, and was not able to obtain said trunk; that at the time said Bowers last went to said depot for said purpose as aforesaid, said Nichols' attention was directed to him, and said Nichols knew that he, said Bowers, was then going to the depot to get said trunk, but that said agent refused to and did not again go to the depot until it was on fire, about 11 o'clock P. M.

" 14. That at the time said mixed train, upon which said trunk was carried, was due at the station of Russiaville, and within a reasonable time after the arrival of said train, the plaintiff caused a demand to be made of the said agent of said company for said trunk and contents, and made reasonable efforts, and within a reasonable time, to demand and procure said trunk and contents, and that defendant refused and neglected to deliver the same.

" 15. That during the night of the 12th of August, 1886, said depot at said town of Russiaville, together with the contents, including said trunk and contents, was wholly destroyed by fire, without any fault or negligence of the plaintiff.

" 16. That said trunk contained the articles mentioned in the complaint belonging to the plaintiff, consisting of the personal goods and wearing apparel of himself and wife, and that said trunk and contents were of the value of $312.15, and that said baggage, while in the possession of the defendant as a common carrier, through the carelessness and negligence of the defendant as aforesaid, was destroyed and lost without any fault or negligence of the plaintiff.

" 17. That on the night of August 12, 1886, and while said trunk and contents were in the depot building of defendant at Russiaville, there was an electrical storm; that said depot building was connected with a telegraphic line used by said company in the operation of said railroad, fitted up with battery, key-board, switch-board, instruments, and other appliances used in transmitting and receiving telegraphic messages by defendant; that about 11 o'clock on said night said building and contents were wholly consumed by fire, the origin of which is not shown by the evidence, and without any fault or negligence upon the part of the plaintiff.

" 18. That if said trunk had been placed on said morning train and carried to said town of Russiaville, or if there had been any agent or employe at said last station for a reasonable time after the arrival of said evening train at Russiaville to deliver the baggage, or if said baggage had been delivered on demand within a reasonable time after the arrival of said train, the same would not have been destroyed.

" If, upon the foregoing facts, the law is with the plaintiff, we find for the plaintiff and assess his damages at$312.15.

" LEVI B. COLVIN, Foreman."

It is objected that in many particulars the verdict of the jury contains conclusions of law rather than findings of facts, and that the same can not, therefore, be adopted by this court in its application of the law. While

the verdict is, in several instances, justly subject to this criticism, we think it contains a sufficient statement of the facts, independently of the legal conclusions objected to, to cover all the issues made by the pleadings, and that such portions as are objectionable as legal conclusions may be disregarded as surplusage.  *Indianapolis, etc., R. W. Co.* v. *Bush*, 101 Ind. 582.

We are of the opinion, from the facts found, that the appellant is shown to be guilty of negligence, both in the shipment and in the delivery of the baggage.

*First.* It was the duty of the appellant, under its contract, to carry the appellee's baggage upon the same train with him and his wife, if the appellee allowed the agent a reasonable time for checking and getting the same on board the train after the purchase of his ticket. The baggage is for the convenience of the passenger on his journey, and the contract implied in the purchase of the ticket requires the carrier to carry the baggage upon the same conveyance with himself, and without extra compensation within certain limits.

A leading case upon this subject is that of *Wilson* v. *Grand Trunk, etc., R. W. Co.*, 56 Me. 60, in which Appleton, C. J., speaking for the court, says:

"It is implied in the contract that the baggage and the passenger go together." And in a note to this case, by Judge Redfield, it is said:

"It is of the very essence of the implied stipulation on the part of the company to carry a reasonable amount of personal baggage with their passengers, that it shall go upon the same train with them. The care which the passenger himself exercises over the baggage is of the greatest importance to its security. In England, when the passenger changes from one main line to a branch line, in order to reach another main line, he is always expected to point out his baggage, and if he do not, is specially inquired of if he have any, and if so, requested to point it

out, and if he fail to do it, is sure to fail of finding his baggage at the end of his route. Under such circumstances there would not be the slightest safety in trusting luggage to go by any mere passenger train without some one to look after it. * * * We think most railway companies would scout the idea of sending baggage by passenger trains, separate from the passengers, as the height of absurdity, unless, perhaps, where the company had been in fault in not forwarding it at the proper time, or by having sent it in the wrong direction." 8 Am. Law Reg. (N. S.) 398, and note.

Having arrived at the conclusion that it was the appellant's duty to forward the appellee's baggage on the same train with himself, if it could reasonably do so, is it shown that this duty was performed?

Finding 5, in the special verdict, discloses that the appellee, from twenty to thirty minutes before the departure of the train, purchased his tickets and requested the agent to check the trunk, and that the check had been placed upon the trunk at least fifteen minutes before the arrival of the train on which it was to be forwarded with the appellee and his wife.

Finding 6 shows that the agent had at least twenty minutes' time before the departure of the train, from the time of the checking of the trunk, to place the same on board the train, but did not do so, and left it to be forwarded on the evening train, on which it was carried to its destination, arriving there at about 6-20 P. M. Nothing is shown as an excuse for this delay. That it constituted palpable negligence there can be no doubt.

*Second.* It was the duty of the appellant, or its servants, to give the appellee a reasonable time after the arrival of the trunk at Russiaville, to take it away before locking it up in the warehouse, and failing to do so, the liability of the company, as a carrier, did not cease. *Dininny* v. *New York, etc., R. R. Co.*, 49 N. Y. 546; *Burnell* v. *N. Y. Central*

*R. R. Co.*, 45 N. Y. 184; *Louisville, etc., R. R. Co.* v. *Mahan*, 8 Bush, (Ky.) 184; *Chicago, etc., R. R. Co.* v. *Boyce*, 73 Ill. 510; *Bartholomew* v. *St. Louis, etc., R. R. Co.*, 53 Ill. 227; *Mote* v. *Chicago, etc., R. R. Co.*, 27 Ia. 22 (1 Am. Rep. 212); 3 Wood's Ry. Law, section 405.

Some of the cases here cited go to the extent of holding that the railroad company must have a baggagemaster or agent at its depot a reasonable time after the arrival of the baggage, to enable the owner to call for the same and receive it, if such company would exempt itself from liability. Applying these legal principles to the facts before us, it must be apparent that the appellant was negligent also in the delivery of the trunk. The appellee presented the check and demanded the trunk, at the station at Russiaville, immediately after the arrival of the train upon which he and his wife had been carried; he was informed by the station agent that the same had not arrived, but would come on the local train at about 5-47 P. M. that day. He then employed a drayman to bring the trunk from the depot upon its expected arrival at 5-47 P. M. The drayman called for the trunk at that time, but was informed by the agent that the train was an hour late, which was not true. Within one hour thereafter, the drayman again started to go to the station and met the agent about one-fourth of a mile from the depot, where he informed him he wanted appellee's trunk. The agent told him it had arrived, but was locked up in the depot, and he could not get it. Twenty or thirty minutes after this time, Bowers, the drayman, again went to the depot for the trunk, but there was no one present to deliver it, and the warehouse in which it was stored was locked up. The agent knew that Bowers would call for the trunk at that time, but did not return to the depot. It is further found that within from fifteen to twenty minutes after its arrival at Russiaville the trunk was placed in the warehouse for the night and locked up. These facts, it seems to us,

absolutely fail to show that the appellee was afforded a reasonable opportunity to receive his baggage. Had not the agent misled the drayman—whether willfully or ignorantly is not important—by telling him that the train was an hour late, we must presume he would have been at the depot in ample time to receive the baggage. Another point of negligence, in the absence of any excuse, was the lateness of the train. We also think the appellant's agent was in fault, under the circumstances, in not returning to the depot. He must have known of the misinformation he had imparted to the drayman. He also knew the trunk was there, and that Bowers wanted it. He should have returned and delivered it to him.

We do not decide that it is negligence for an agent not to remain at the station more than from fifteen to twenty minutes to deliver baggage that has been shipped there. Under ordinary circumstances this may be a reasonable time for him to remain. As to what constitutes reasonable time is usually a mixed question of law and fact. But where the facts are found specially, it becomes the duty of the court to determine. Under the peculiar circumstances of this case, we think the appellant was negligent in failing to deliver the trunk when called for.

Having seen that appellant was in fault both in the delay of shipping and in the failure to deliver, it can not, we think, be justly claimed that appellant's subsequent position was that of a mere warehouseman, who is exempt from the extraordinary responsibility of a common carrier. The carrier is an insurer of the goods. All the presumptions are against it until it has shown that by some act of the owner, or some unavoidable accident, it was prevented from performing its contract.

Nor do we think it appears that the loss of the goods resulted from the act of God. The jury found that the origin of the fire was not shown by the evidence. It was incumbent upon the appellant to show by the evidence

Toledo, St. Louis & Kansas City Railroad Company *v.* Tapp.

that the loss was caused by lightning, if such was its theory. This it failed to do, and it has, therefore, not brought itself within any of the exceptions to its general liability as a carrier. We need not, therefore, enter upon any extended discussion of the doctrine of approximate cause which the appellant seeks to invoke. If it were conceded, however, that both the negligence of the appellant in forwarding and delivering the trunk, and some other (innocent) cause contributed equally to the loss, it still does not follow that the appellant is exempt, for it is settled that where two causes combine to produce a loss, both being proximate, the one the result of negligence, the other an occurrence as to which neither party is at fault, the negligent party is liable, provided the loss would not have been sustained but for such negligence. *Grimes* v. *Louisville, etc., R. W. Co.*, 3 Ind. App. 573.

It is further contended that the evidence is insufficient to sustain the finding of facts made by the jury. Without attempting to discuss the evidence at length, it will be sufficient to say that we have given it a careful consideration, and think it ample to warrant the jury in its findings.

We think the merits of the case have been fully and fairly tried, and a proper result reached. We find in the record no cause for reversal, among the many relied upon.

Judgment affirmed.

Filed March 3, 1893.